OPINION
Appellant, Donna Rothwell Trusty Bush, appeals the termination of her parental rights as to her two younger children, Timothy and Patty. Appellant is the natural mother of three children, Charles, Timothy and Patty. Charles is not a party to this proceeding as he was removed from the home and placed in long term foster care before these proceedings began. Carl Rothwell is the father of the three children. Appellant and Rothwell divorced and appellant married Alvin Trusty. This marriage was also terminated by divorce. Appellant is presently married to Mike Bush.
Appellant has a long history of involvement with BCCSB. BCCSB became involved with appellant and her family on March 26, 1990 when appellant moved from Adams County to Butler County. The Adams County Children Services Board was concerned about appellant's ability to maintain proper hygiene for her children and to maintain her home in a sanitary manner. On September 13, 1990, Timothy, then three years of age, was found at a restaurant at 11:44 p.m. with two other three-year-olds with no adult supervision. Appellant spoke with police and stated that she and her mother were watching Timothy but had no idea where he was. Appellant was informed that a report would be filed and BCCSB would be doing a follow-up on the child's well being.
On September 27, 1990, Middletown Regional Hospital reported that appellant was overwhelmed and depressed from parenting her children and divorcing her second husband, Alvin Trusty. Appellant was referred to the Family Development Program (FDP) on November 14, 1990. A caseworker with FDP met with appellant in her apartment and reported that the apartment was filthy, infested with roaches and had a bad odor.
For the next several months, FDP and BCCSB worked with appellant to find new housing, and stressed the importance of supervising the children and the need to take the children to scheduled doctor appointments. FDP also worked with appellant regarding personal hygiene for the children. The children were very dirty and appellant stated that they did not have any clean clothes. Appellant's apartment was in deplorable condition with dirty dishes piled on the kitchen counter, food all over the floor and the counter and fifteen bags of dirty laundry on the floor. BCCSB continued to address these problems with appellant, but appellant failed to make any effort to remedy the problems.
By April 1991, according to reports written by the caseworker, it became more apparent to BCCSB that appellant was not able to manage her children's behavior. During May of 1991, appellant seemed preoccupied with problems with her ex-husbands instead of focusing on the needs of her children. On May 8, 1991, appellant told her eldest child, Charles, that he had to go to school. He refused. Appellant took away the television as punishment. Charles beat appellant with a broom handle and kicked her in the eye. Appellant was taken to the emergency room for a badly bruised arm.
On May 10, 1991, Timothy had a dime-sized red sore and bruises on his spine. When questioned, Timothy stated that his dad had whipped him. On May 13, 1991, Timothy was observed to have more red sores on his lower back, some scabbed over and at least one open sore. Appellant stated that the injuries could have possibly happened from playing in the bushes or have been inflicted by the family cat.
On May 14, 1991, BCCSB filed a complaint and removed Charles, Timothy and Patty due to ongoing problems such as inadequate housing, Charles' poor attendance at school, appellant's and other family members' use of corporal punishment for discipline and the children being out of control.
From November 14, 1990 to June 16, 1991, appellant actively participated with FDP. Appellant also successfully completed parenting classes through Pastoral Counseling. From October 11, 1991 to June 6, 1992, appellant participated in the Development of Living Skills Program. Appellant was to learn effective ways to parent her children. During this same time period, appellant was in counseling at Middletown Mental Health. Appellant's therapist stated that appellant was progressing well and that once adequate housing was obtained and there were services provided, appellant would be capable of caring for her children.
On December 5, 1991, Timothy was returned home to appellant. On February 14, 1992, Patty was returned home. Charles remained in the custody of BCCSB due to his continued behavior problems and appellant's inability to control him.
Prior to and after appellant's completion of supportive services, BCCSB noticed a decline in Timothy and Patty's behavior. The children began to "talk back", have tantrums and fight with one another. Appellant would intervene passively or threaten the children with punishment but fail to follow through with the punishment. On December 14, 1992, BCCSB received a referral stating that the children were having behavioral problems at school. Appellant again began to feel overwhelmed in parenting Patty and Timothy and was referred to FDP in June 1993. Appellant completed the program in September 1993. Appellant actively participated and appeared able to set limits and increase discipline techniques. However, through the month of October 1993, BCCSB made several visits to appellant's home. The home was in disarray with food on plates throughout the house and piles of clutter on the floor.
On March 2, 1994, BCCSB was advised that Charles had disclosed to his foster family that his father, Carl Rothwell, had sexually abused him when he was younger. BCCSB spoke with appellant regarding Charles' allegations against Carl Rothwell. BCCSB advised appellant to supervise Carl Rothwell's court-ordered visitations with Timothy and Patty.
On April 28, 1994, BCCSB visited appellant's home. Appellant was having a difficult time controlling the children. On May 12, 1994, BCCSB again visited appellant's home. Appellant expressed concerns regarding her lack of control over Timothy. On May 31, 1994, BCCSB received a referral from appellant's neighbor that Timothy had been sexually abusing her two children. There were also allegations made that Timothy had sexually abused his sister, Patty.
On September 2, 1994, a complaint was filed in Butler County Juvenile Court requesting that permanent custody of Timothy and Patty be granted to Butler County Children Services Board. On December 2, 1994, a new complaint was filed requesting permanent custody. This new complaint was necessary as the court was unable to schedule the hearings in a timely manner due to docketing problems. Timothy and Patty had been in foster homes since they were removed from appellant's home on September 2, 1994.
On December 7, 1994, a hearing was held. The court placed a no contact order against Carl Rothwell and ordered that any contact between appellant and the children be supervised by BCCSB. An adjudication hearing was conducted on April 26, 1995. At the hearing on April 26, 1995, Carl Rothwell's attorney requested a continuance due to the fact that she had just been appointed as Carl Rothwell's attorney and had not even met with him as of the date of the hearing. Appellant did not object to the continuance. The matter was continued until September 6, 1995.
At the September 6, 1995 hearing, BCCSB amended the original complaint and asked that the children be found to be dependent children, withdrawing allegations of abuse and neglect. Appellant stipulated to the finding of dependency. The guardian ad litem also stipulated to the finding of dependency. The court made a finding that the children were dependent under R.C. 2151 and ordered that temporary custody of both children be granted to BCCSB, that a case plan be initiated, that the children should continue their current therapy and the BCCSB should assist the appellant and her children with participation in therapy. The court set a review for six months to see whether they were any closer to reunification.
On February 27, 1996, BCCSB filed a motion for permanent custody of both children. The permanent custody hearing was held July 27, 1996. After consideration of testimony and evidence, the court found that neither of the children could be placed with either parent within a reasonable period of time; that no relative could provide an adequate home for these children at that time; and that granting BCCSB permanent custody was in the best interest of the children. BCCSB's motion for permanent custody was granted and all parental rights of Carl Rothwell and appellant were terminated. Appellant timely filed this appeal; Carl Rothwell has not filed an appeal.
Appellant raises two assignments of error. Appellant's first assignment of error is that the trial court erred to the prejudice of appellant by granting permanent custody of Timothy and Patty to BCCSB and terminating her parental rights. Appellant argues that the trial court abused its discretion because the agency did not make diligent efforts to remedy the conditions that led to the removal of the children before granting permanent custody. Appellant's second assignment of error asserts that the trial court erred to the prejudice of appellant by finding that the evidence was clear and convincing that the children could not be placed with appellant within a reasonable period of time. The assignments of error will be discussed together.
A trial court shall grant permanent custody to an agency only when it finds by clear and convincing evidence that (1) one or more of the eight specifically enumerated factors in R.C.2151.414(E) are present, that (2) permanent custody is in the best interest of the child and that (3) reasonable efforts at reunification have been made or that such efforts would be futile. In re Lawson/Reid (Apr. 18, 1997), Clark App. No. 96-CA-0010, unreported.
With respect to the first element of the Lawson/Reid test, "[p]ermanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist." In re William S. (1996), 75 Ohio St.3d 95, syllabus. The trial court does not have "the unbridled discretion to come up with its own factors that would justify terminating parental rights." Id. at 99.
R.C. 2151.414(E) provides in pertinent part that:
 In determining * * * whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing * * * that one or more of the following exists as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 (2) The severe and chronic mental illness, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future[.]
In the case at bar, the trial court determined that:
 [M]other's mental condition and limited cognitive functioning was largely unrebutted. Based upon that evidence, it is clear that she cannot provide her children with an adequate home at this time and will not be able to do so within the foreseeable future. * * * As pointed out by the [guardian ad litem] in her report, mother has tried to comply with the services offered to her and has complied substantially with every service which was provided to her in the home. Despite this general compliance, there has been little progress made toward reunification. This fact underscores the basic, clear, and compelling argument raised by the BCCSB that mother simply cannot provide adequate parental care for her children and no reasonable amount or kind of services will assist her toward that goal.
The court then made the finding that "neither of these children can be placed with either parent within a reasonable period of time."
An award of permanent custody will not be disturbed on appeal as being against the manifest weight of the evidence if it is supported by credible evidence. In re Noe (July 21, 1997), Butler App. Nos. CA96-10-217, CA96-11-224, unreported. The trial court found that although appellant had attempted to remedy the conditions that caused Timothy and Patty to be removed from the home, she had not succeeded and that no amount of social services would help her achieve that goal. Based on a review of the record, this court finds that clear and convincing evidence existed from which the trial court could have found that neither child could be placed with either parent within a reasonable period of time, thereby satisfying the requirement that one or more of the eight factors of R.C. 2151.414(E) be present before a court can grant permanent custody.
The second prong of the Lawson/Reid test requires that the trial court make a finding that permanent custody would be in the best interest of the child. The trial court made the finding that "granting of the instant motion by the BCCSB is in the best interest of both these children."
R.C. 2151.414 states in pertinent part:
 (D) In determining the best interest of a child * * * the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 (2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
(4) The custodial history of the child;
 (5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency[.]
As previously stated, the trial court determined that Timothy and Patty could not be placed with either parent within a reasonable time. The court then determined that based on the evidence presented Timothy was not a candidate for adoption at the present time due to his serious behavior problems. However, evidence was presented that Timothy would benefit from a severance of parental ties and that his behavioral problems would diminish if his ties with his mother were severed. The court then determined that Patty was a candidate for adoption and that Patty was "depressed and angry and is ready for a permanent home."
Based on the foregoing, there was clear and convincing evidence supporting the trial court's finding that it is in the best interest of Timothy and Patty to be placed in the permanent custody of the BCCSB.
The third factor of the Lawson/Reid test requires that reasonable efforts at reunification be made or that such efforts would be futile. R.C. 2151.414(E)(1) places upon a children services agency a duty to provide reasonable case planning and diligent efforts to assist the parents. This provision equally places upon the parents a duty to utilize the services provided and to make substantial improvements. The law, however, does not guarantee success.
Subsequent to the children being removed from appellant's home for the second time, appellant was evaluated by Dr. Charles Lee of the Children's Diagnostic Center. Dr. Lee expressed concern that appellant's low cognitive functioning, with an I.Q. of 69, would hinder her ability to care for her children. Dr. Lee was unable to make any recommendations to improve appellant's parenting skills because she had already been provided with home-based services, a parent aide and individual counseling. Appellant also met with Ronald Ferguson of the Middletown Area Mental Health Center to work on individual and parenting issues. Ferguson testified that appellant had made some improvement; however, he did not believe that appellant was likely to improve to the point where BCCSB would return the children to her. Additionally, appellant, her current husband, Mike Bush, and the two children met with Dr. Joe Cresci, a psychiatrist. Dr. Cresci testified that he understood that he was to determine if appellant could parent her children and if Mike Bush could assist. Dr. Cresci came to the conclusion that appellant could not adequately provide care for her children on a permanent basis.
In the instant case, the court found that "mother simply cannot provide adequate parental care for her children and no reasonable amount or kind of services will assist her toward that goal." This court will not overturn the decision of the trial court unless it is against the manifest weight of the evidence. Seasons Coal Co., Inc. v. Cleveland (1984), 10 Ohio St.3d 77, 80. Based on a review of the evidence, this court finds that there was competent, credible evidence to support the court's finding that good faith efforts at reunification had been made. Furthermore, although appellant was provided with a plentitude of services and opportunities, appellant failed to make any substantial progress in overcoming her parental deficiences that would justify the returning the children to her custody.
The instant case is distinguishable from the recent Supreme Court decision in In re Hayes (1997), 79 Ohio St.3d 46. The former version of R.C. 2151.413(A), which applied in Hayes and applies in this case, mandated that "a children services agency seeking permanent custody of a child must have had temporary custody of the child for at least six months immediately preceding the filing of the motion for permanent custody." Id. at syllabus. In Hayes, the Supreme Court held that the "logical purpose for the six-month delay imposed upon a children services agency is to give parents an adequate opportunity to rectify the problems which initially forced the child into temporary custody." Id. at 48.
In this case, although BCCSB initially filed a complaint for permanent custody when the children were first removed from the home, seemingly in violation of Hayes, due to continuances, the children were not found dependant and temporary custody granted to BCCSB until more than one year after they were first removed from the home. It was not until February 27, 1996, over six months from the time that temporary custody was granted, that BCCSB moved for permanent custody. This is consistent with the Supreme Court's concern in Hayes that parents be given an opportunity to rectify the problems in the home before the agency moves for permanent custody.
Based upon all of the foregoing, appellant's first and second assignments of error are overruled.
Judgment affirmed.
KOEHLER and WALSH, JJ., concur.